**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 41046**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2014 Opinion No. 77** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: September 24, 2014** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| MATTHEW O. BROOKS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Thomas J. Ryan, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant. Ben P. McGreevy argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

_____

MELANSON, Judge

Matthew O. Brooks appeals from his judgment of conviction for possession of a controlled substance. Specifically, Brooks contends that the district court erred in denying his motion to suppress evidence, arguing that his alleged failure to signal for five seconds before changing lanes did not violate the law and thus could not justify the traffic stop. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Brooks was stopped after an officer observed Brooks change lanes on the interstate without signaling for at least five continuous seconds.[1] The officer understood this to be a

_____

[1] The officer testified at the suppression hearing that Brooks signaled for less than two seconds prior to moving from the left to the right lane of the interstate.

violation of I.C. § 49-808(2). The officer contacted Brooks and had Brooks roll down his passenger side window. While speaking with Brooks, the officer noticed an open cigarette box in plain view on the passenger seat. Visible inside the box was a small plastic bag of a clear crystal substance, which the officer recognized as methamphetamine. The officer also smelled the odor of marijuana through the open window and observed drug paraphernalia in the center console. A subsequent search of the vehicle revealed more paraphernalia.

Brooks was charged with possession of a controlled substance, I.C. § 37-2732(c)(1). He filed a motion to suppress evidence obtained as a result of the stop, arguing that the stop was not justified by reasonable suspicion. Specifically, he asserted that the statute did not require him to signal for at least five continuous seconds unless he was both on a controlled-access highway and turning from a parked position. Therefore, he argued, the stop based on his supposed violation of the statute was unlawful and the evidence gathered therefrom should be suppressed. The district court denied the motion after a hearing. Brooks filed a motion to reconsider, which was also denied.[2] Brooks then entered a conditional guilty plea to possession of a controlled substance, preserving his right to appeal the denial of his motion to suppress. The district court withheld judgment and placed Brooks on probation for three years. Brooks appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

---

[2] In its order denying the motion to reconsider, the district court clarified its interpretation of the statute, stating: "this Court reads the plain language of I.C. § 49-808(2) to require that drivers on controlled access highways must use their turn signal continuously for five (5) seconds before moving right or left."

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). Observation of a traffic violation provides reasonable suspicion to justify a limited stop. *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *State v. Anderson*, 134 Idaho 552, 554, 6 P.3d 408, 410 (Ct. App. 2000).

### III.

### ANALYSIS

Brooks argues that the district court erred in interpreting I.C. § 49-808(2) as requiring that a continuous signal must be given for at least five seconds before moving left or right on a controlled-access highway. Brooks contends that the plain language of I.C. § 49-808(2) requires such a signal on a controlled-access highway only when simultaneously turning from a parked position.[3] Brooks also contends that, if the statute is deemed ambiguous, it should be construed in his favor under the rule of lenity. Additionally, in the event that we agree with Brooks's interpretation of the statute, Brooks asserts that the officer's misunderstanding of the statutory requirements is a mistake of law that rendered the stop per se unreasonable.

We need not address Brooks's alternative arguments, as this case is resolved through the plain language of the statute. This Court exercises free review over the application and

---

[3] Brooks concedes that the interstate upon which he was traveling is a controlled-access highway for purposes of I.C. § 49-808(2).

3

construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67.

Idaho Code Section 49-808 governs the use of turn signals on Idaho roadways and provides, in pertinent part:

> (1) No person shall turn a vehicle onto a highway or move a vehicle right or left upon a highway or merge onto or exit from a highway unless and until the movement can be made with reasonable safety nor without giving an appropriate signal.
> (2) A signal of intention to turn or move right or left when required shall be given continuously to warn other traffic. *On controlled-access highways and before turning from a parked position*, the signal shall be given continuously for not less than five (5) seconds and, in all other instances, for not less than the last one hundred (100) feet traveled by the vehicle before turning.

(Emphasis added.)

Brooks argues that the plain meaning of the word "and" is exclusively to conjoin two ideas, leading to his interpretation that the italicized portion of the statute requires signaling for at least five seconds only when a vehicle is turning from a parked position on a controlled-access highway. For support of this proposition he cites *Ameritel Inns, Inc. v. Pocatello-Chubbuck Auditorium or Cmty. Ctr. Dist.*, 146 Idaho 202, 192 P.3d 1026 (2008). In that case, the Idaho Supreme Court interpreted the word "and" as a "conjunction connecting words or phrases expressing the idea that the latter is to be added to or taken along with the first." *Id.* at 205, 192 P.3d at 1029 (quoting BLACK'S LAW DICTIONARY 86 (6th ed. 1990)). Thus, the use of "and" in a statute defining an auditorium district as one to "build, operate, maintain, market and manage" public facilities required the auditorium district to perform all of the listed functions in the list. *Ameritel Inns*, 146 Idaho at 205, 192 P.3d at 1029 (quoting I.C. § 67-4902).

Brooks also cites to the case of *Brink v. State*, 117 Idaho 55, 785 P.2d 619 (1990). In *Brink*, the Idaho Supreme Court interpreted a portion of I.C. § 18-8002(4)(b) that formerly allowed suspension of driving privileges for refusal to take an evidentiary test unless the court

4

found that "the police officer did not have probable cause to stop *and* request [the driver] to take the test." *Brink*, 117 Idaho at 56-57, 785 P.2d at 620-21. The Court rejected the state's argument that the word "and" should be replaced with "or" in the statute. Instead, the Court held that the word "and" in the statutory phrase "probable cause to stop and request" is "plainly conjunctive," requiring an officer to "have probable cause to stop the driver *and* probable cause to request that the driver submit to a blood alcohol content test." *Id.*; *see also State v. Gamino*, 148 Idaho 827, 830, 230 P.3d 437, 440 (Ct. App. 2010) (treating the word "and" in statutory language allowing a court to suspend the execution of the judgment *and* place the defendant on probation as conjunctive, suggesting that "suspension of a sentence must always be accompanied by probation").

Brooks also attempts to distinguish the case of *K Mart Corp. v. Idaho State Tax Comm'n*, 111 Idaho 719, 727 P.2d 1147 (1986). In that case, the Court interpreted the word "and" in a tax exemption statute as indicating that the "statute exempts two types" of property. *K Mart*, 111 Idaho at 721, 727 P.2d at 1149. Brooks argues that the Court's interpretation in *K Mart* departed from the plain meaning of the word "and" only because the two types of personal property subject to the tax exemption were mutually exclusive in nature. *See id.* However, the Court's interpretation did not rely on the mutually exclusive nature of the exemptions. Indeed, Brooks's reading of *K Mart* is based on the dissent position in that case, which was explicitly rejected by the majority. *See id.* at 724, 727 P.2d at 1152. Instead, based on the context, the Court determined that both exemptions were modified by a subsequent limitation clause due to the legislature's use of "and" instead of "or" between the clauses. *Id.* at 721, 727 P.2d at 1149. Thus, the Court treated the two clauses as two independent circumstances in which the tax exemption may apply, both of which were modified by a subsequent limitation clause, *because* the legislature had chosen to use the word "and" in between the clauses. *See id.*

In each of the preceding examples, the plain, obvious, and rational meaning of "and" was contingent on the context in which it appeared. This is supported by the traditional dictionary definition of "and." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 80 (1993) (defining "and" based on its use in various contexts); BLACK'S LAW DICTIONARY 86 (6th ed. 1990) (stating that "and" "expresses a general relation or connection, a participation or accompaniment in sequence, having no inherent meaning standing alone but deriving force from what comes before and after"). Thus, although we agree that the plain language of the statute

5

requires a vehicle to signal for at least five continuous seconds when the vehicle is turning from a parked position on a controlled-access highway, the five-second signaling requirement is by no means limited to such circumstances.

In the context of I.C. § 49-808(2), "and" is not used to join together several items in a list of required actions, as it was in *Ameritel Inns*. Nor does it join together two unmodified verbs that the context demands must accompany one another, as was the case in *Brink* and *Gamino*. Instead, similar to its use in *K Mart*, the word "and" in I.C. § 49-808(2) signifies that there are two circumstances and that a vehicle must signal continuously for at least five seconds when either or both circumstances apply. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 80 (noting that "and" may be "used as a function word to express . . . reference to either or both of two alternatives . . . esp. in legal language when also plainly intended to mean *or* <bequeathed to a person~her bodily issue> <property taxable for state~county purposes>"). Indeed, the statutory language surrounding "and" reveals its plain, obvious, and rational meaning in this context. The "and" at issue in this statute joins together two independent prepositional phrases--"*[o]n* controlled-access highways" and "*before* turning from a parked position"--each of which individually modifies the remainder of the sentence to indicate when a five-second signal is required. If the legislature had intended Brooks's proposed interpretation, it could have eliminated the "and" entirely and simply written that, "before turning from a parked position on a controlled-access highway, the signal shall be given continuously for not less than five (5) seconds." We must, therefore, give effect to the "and" consistent with the legislature's intent. *See State v. Yzaguirre*, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007). The district court's interpretation of the statute does this. Brooks's interpretation, however, would render the "and" in the statute superfluous, and we cannot interpret a statute in such a way that renders any part void, superfluous, or redundant. *See id.*; *State v. Alley*, 155 Idaho 972, 976, 318 P.3d 962, 966 (Ct. App. 2014).

Moreover, reading the statute as a whole reveals the intent of the legislature as expressed through the plain language. The first subsection of I.C. § 49-808 provides that "no person shall turn a vehicle onto a highway or move a vehicle right or left upon a highway or merge onto or exit from a highway *unless and until the movement can be made with reasonable safety nor without giving an appropriate signal*." (Emphasis added.) The first sentence of subsection two further provides that "a signal of intention to turn or move right or left when required shall be

6

given continuously *to warn other traffic*." (Emphasis added.) These provisions disclose a clear legislative intent to promote reasonable safety on the roadways by requiring an appropriate signal for the circumstances to give sufficient notice to warn other traffic that a driver intends to turn or make a lateral movement on the roadway. *See* I.C. § 49-808(1), (2). Accordingly, the statute must be interpreted with this legislative intent in mind. Brooks's proposed interpretation of the statute would necessarily require vehicles turning from a parked position on any roadway other than a controlled-access highway to signal for not less than the last 100 feet traveled by the vehicle before turning--an obvious impossibility. Additionally, testimony at the suppression hearing established that a vehicle moving at just 55 mph travels 80 feet per second. Thus, Brooks's interpretation would mean that a vehicle traveling at speeds of up to 80 mph--the newly increased speed limit on Idaho interstates--would need to signal for less than a second before changing lanes. In either of these instances, Brooks's interpretation of the statute would be inconsistent with the clearly expressed legislative intent of ensuring driver safety by requiring signals that are appropriate for the attendant circumstances. Conversely, the district court's interpretation of I.C. § 49-808(2) meets this clearly expressed legislative intent.

Accordingly, when read in the context of the entire statute and in a manner that gives effect to all of its words and provisions, the plain, obvious, and rational meaning of the language of I.C. § 49-808(2) requires that a vehicle signal for at least five continuous seconds (1) when traveling on a controlled-access highway and (2) when turning from a parked position (regardless of the type of roadway on which the vehicle is parked); in all other circumstances, a vehicle must signal for at least the last 100 feet traveled before turning. As found by the district court, Brooks failed to signal for at least five continuous seconds before moving from the left lane to the right lane on a controlled-access highway. This violation of the traffic laws provided reasonable suspicion for the stop, during which a controlled substance was discovered in plain view. As a result, the district court did not err in denying Brooks's motion to suppress.

## IV.

## CONCLUSION

No violation of Brooks's constitutional rights occurred when he was stopped, as his failure to signal for at least five seconds before changing lanes on a controlled-access highway provided the officer with reasonable suspicion to perform the stop. Therefore, the district court

7

did not err in denying Brooks's motion to suppress.  Accordingly, we affirm Brooks's judgment of conviction for possession of a controlled substance.

Chief Judge GUTIERREZ and Judge GRATTON, **CONCUR.**