**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46240**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: June 30, 2020** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JARED BLAKE FRANDSEN, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Madison County. Hon. Stevan Thompson, District Judge.

Order denying motion to suppress, <u>reversed</u>; judgment of conviction, <u>vacated</u>; and <u>case remanded</u>.

Randolph B. Neal, Idaho Falls, for appellant. Randolph B. Neal argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.

_____

BRAILSFORD, Judge

Jared Blake Frandsen appeals from the judgment of conviction entered on his conditional guilty plea. He asserts the district court erred in denying his motion to suppress. For the reasons set forth below, we reverse the court's order, vacate Frandsen's judgment of conviction, and remand.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The district court set forth the following facts, which the parties do not dispute:

On January 2, 2017, [Sheriff's Deputy] Bestor was driving on Main Street in Rexburg when he observed a vehicle that he believed belonged to Frandsen. Bestor had previously received a tip that Frandsen was involved in selling drugs. After Bestor turned around to try and locate the vehicle, he entered the parking lot of a Quality Inn where he observed the vehicle next to a Subaru. The Subaru attempted to leave the parking lot and pulled onto the driveway leading to a

1

Maverick gas station and Main Street. The driveway does not lead anywhere else. When Bestor observed that one of the Subaru's headlights was out, he pulled the vehicle over while it was still in the driveway. Bestor believed that the driveway was a public road, but later conceded that the road was not publically maintained and that he had been mistaken. Frandsen was seated in the back of the Subaru. As Bestor asked for information from the driver and passengers,[1] he stated that he smelled the odor of marijuana and began questioning the occupants as to whether they possessed any marijuana. Frandsen was eventually discovered to have small quantities of marijuana and assorted paraphernalia on his person and in the car.

As a result of this encounter, the State charged Frandsen with four felonies including delivery of a controlled substance, Idaho Code § 37-2737 (Count I); delivery of a controlled substance where children are present, I.C. § 37-2737A (Count II); possession of a controlled substance with intent to deliver where children are present, I.C. § 37-2737A (Count III); and possession with intent to deliver a controlled substance, I.C. § 37-2732(a)(1)(A) (Count IV).

Frandsen filed a motion to suppress all the evidence obtained from Deputy Bestor's traffic stop. Frandsen argued that Deputy Bestor did not have reasonable suspicion to stop the Subaru because it was on private property and that the Idaho statute requiring two operable headlights applies only to vehicles on a "highway," meaning a "publicly maintained" roadway.[2] Following an evidentiary hearing, during which Deputy Bestor testified, the district court issued a written decision. The court found that Deputy Bestor did not believe the Subaru's occupants needed police assistance but instead that Deputy Bestor "pulled the Subaru over because he believed that a statute was being violated."[3] Based on these findings, the court rejected the

---

1     The passengers included two female juveniles under the age of eighteen.

2     The legal requirement of two operable headlights does not apply to vehicles operating on private property. Idaho law requires "[e]very motor vehicle . . . shall be equipped with at least two (2) head lamps." I.C. § 49-905(1). This requirement applies to motor vehicles operating on "highways." *See* I.C. § 49-902(1) ("It shall be unlawful for any person to drive . . . on any *highway* any vehicle [which] is not at all times equipped with the [head] lamps . . . required by the provisions of this chapter . . . .") (emphasis added); *see also* I.C. § 49-903 (requiring vehicles on highways to have headlights). The statutory definition of "highways" includes only "publicly maintained" roadways. I.C. § 49-109(4). A person convicted of violating I.C. § 49-905 is guilty of an infraction. I.C. § 49-905(7).

3     Additionally, the district court found Deputy Bestor "pulled the Subaru over . . . possibly because he was already searching for Frandsen." On appeal, the State does not rely on this finding to argue Deputy Bestor had reasonable suspicion to stop the Subaru. Moreover, the evidence does not support this finding. Deputy Bestor repeatedly testified the purpose of the

2

State's argument that the community caretaking function justified the traffic stop. Further, the court ruled that, although Deputy Bestor believed at the time of the stop that the Quality Inn driveway was a publically maintained road, Deputy Bestor's subjective belief was not reasonable because "the driveway possesses no characteristics common to other publically maintained roads."

Nevertheless--despite ruling that Deputy Bestor did not have reasonable suspicion that the Subaru's driver was committing a traffic violation--the district court denied Frandsen's motion to suppress. The court held that Deputy Bestor had reasonable suspicion to stop the Subaru because he believed "the driver of the Subaru *was about to* commit a traffic violation." (Emphasis added.) The court explained that "it was entirely reasonable for Deputy Bestor to believe that the Subaru was going to exit the parking lot of the Quality Inn by turning onto Main Street, where the driver would immediately be in violation of the statute." The court reached this conclusion despite that Deputy Bestor never testified that he believed the Subaru's driver was about to commit a traffic violation. Instead, Deputy Bestor definitively testified that he stopped the Subaru because he mistakenly believed it was on a public roadway.

Frandsen filed a motion for reconsideration of the district court's denial of his motion to suppress. Addressing that motion, the court expanded its prior ruling. After reiterating that "the facts of this specific situation justified the reasonable belief that a traffic violation *was about to be* committed," the court further ruled that the situation "justified a belief that a traffic violation *had already been* committed." (Emphasis added.) In support of this ruling, the court explained:

> Bestor could have possessed a reasonable belief that a traffic law *had* been violated. Because the property at issue was a hotel and not the home or other private property of the driver of the Subaru, it was reasonable for Bestor to believe that the driver of the Subaru had previously committed a traffic infraction by driving to the hotel parking lot in the first place. It is not likely that the first time the headlight on the Subaru failed to function was when the car attempted to leave the parking lot.

---

traffic stop was for a broken headlight. Although he also testified he initially followed a vehicle he believed to be Frandsen's into the Quality Inn parking lot, Deputy Bestor testified he was not aware at the time of the stop of the identities of the occupants in either the Subaru or the other vehicle.

Following the court's denial of Frandsen's motion for reconsideration, Frandsen entered a conditional guilty plea to Counts I, II, and III and reserved his right to appeal the denial of his motion to suppress. Frandsen timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Frandsen challenges the district court's ruling that Deputy Bestor had reasonable suspicion to stop the Subaru based on a belief the Subaru's driver was about to commit or had already committed a traffic violation. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). "[A]n officer may draw reasonable inferences from the facts, and those inferences may be informed by the officer's experience and law enforcement training." *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). The reasonableness of the suspicion, however, must be evaluated on the totality of the circumstances at the time of the stop. *Ferreira*, 133 Idaho at 483, 988 P.2d at 709. "[T]he suspicion for the stop must be based upon objective information available to the officer when he decided to make the stop, and cannot be bolstered by evidence gathered following the stop." *State v. Emory*, 119 Idaho 661, 663, 809 P.2d 522, 524 (Ct. App. 1991).

4

Idaho law is well-established that the "[o]bservation of a traffic violation provides reasonable suspicion to justify a limited stop." *State v. Brooks*, 157 Idaho 890, 892, 341 P.3d 1259, 1261 (Ct. App. 2014); *see also Deen v. State*, 131 Idaho 435, 436, 958 P.2d 592, 593 (1998) (requiring traffic stop be supported by reasonable, articulable suspicion vehicle is being driven contrary to traffic laws). In this case, however, Deputy Bestor did not actually observe a traffic violation. Although Deputy Bestor believed at the time of the stop that the Subaru was on a public roadway, he conceded the Quality Inn driveway is not a "publicly maintained" road but, rather, private property. The State does not dispute either that a traffic violation did not occur because the driveway is private property or that Deputy Bestor's mistaken, subjective belief of a traffic violation is inadequate to constitute reasonable suspicion. *See, e.g.*, I.C. § 49-902(1) ("It shall be unlawful for any person to drive . . . on any *highway* any vehicle [which] is not at all times equipped with the [head] lamps . . . required by the provisions of this chapter . . . .") (emphasis added); *State v. Spies*, 157 Idaho 269, 273, 335 P.3d 609, 613 (Ct. App. 2014) ("The only relevant inquiry . . . is whether the officer had reasonable suspicion based upon an objective view of the information available to the officer at the time of the stop.").

Instead, the State adopts the district court's analysis and argues a belief that the Subaru's driver was about to turn onto Main Street with an inoperable headlight constituted reasonable suspicion for Deputy Bestor's traffic stop. Both the State's argument and the court's analysis, however, are inconsistent with the well-established rule that "the reasonable suspicion standard requires . . . more than mere speculation or instinct on the part of the officer." *Ferreira*, 133 Idaho at 483, 988 P.2d at 709. In this case, in order to support its conclusion that Deputy Bestor reasonably believed the Subaru's driver was about to commit a traffic violation, the court speculated that the Subaru was about to turn onto Main Street, at which time the driver would have violated the law. At the same time, however, the court rejected as speculative Frandsen's assertion that the Subaru could have remained on private property by entering the Maverick parking lot. Whether the Subaru would have turned onto Main Street or alternatively driven to the Maverick, however, are equally speculative and cannot support reasonable suspicion. *See id.* (requiring more than mere speculation for reasonable suspicion).

The district court's expanded ruling in response to Frandsen's motion for reconsideration is also premised on speculation. As noted above, this ruling was that Deputy Bestor reasonably believed "the driver of the Subaru had previously committed a traffic infraction" by driving to

5

the Quality Inn with an inoperable headlight. Specifically, the court speculated that "it is not likely that the first time the headlight on the Subaru failed to function was when the car attempted to leave the parking lot." The court's speculation about when the headlight actually became inoperable, however, cannot support the conclusion that Deputy Bestor had reasonable suspicion to stop the Subaru.

Moreover, the district court's and the State's reliance on *State v. Sheldon*, 139 Idaho 980, 88 P.3d 1220 (Ct. App. 2003), and *State v. Chapman*, 146 Idaho 346, 194 P.3d 550 (Ct. App. 2008), for the proposition that an officer's belief that a *future* traffic violation is about to occur constitutes reasonable suspicion for a lawful traffic stop is misplaced. Neither *Chapman* nor *Sheldon* stands for or otherwise supports such a proposition. Although both cases involved traffic stops, neither addressed whether there was reasonable suspicion for the traffic stops. The defendant in *Sheldon* did not challenge the officer's reasonable suspicion for initiating the traffic stop. Rather, at issue was whether reasonable suspicion justified expanding the officer's investigation beyond the scope of the initial, unchallenged traffic stop. *Sheldon*, 139 Idaho at 982, 88 P.3d at 1222 (addressing whether "the police officers had unlawfully extended the scope of a traffic stop by questioning the driver on matters unrelated to the stop").

Although the defendant in *Chapman* attempted to challenge "the legality of the traffic stop," this Court declined to address that challenge based on the defendant's failure to support the challenge with argument and authority. *Chapman*, 146 Idaho at 349-50, 194 P.3d at 553-554. Instead, the *Chapman* Court addressed numerous other issues unrelated to whether reasonable suspicion supported the officer's initial traffic stop. *Id.* at 350-52, 194 P.3d at 554-56. Accordingly, we reject the notion that either *Sheldon* or *Chapman* supports the district court's conclusion in this case that an officer's belief that a traffic violation is about to occur constitutes reasonable suspicion for a lawful traffic stop that comports with the Fourth Amendment.

Finally, we reject the State's argument that the community caretaking function justified Deputy Bestor's traffic stop. Specifically, the State challenges the district court's finding that "Bestor did not believe that the occupants of the Subaru needed police assistance, nor did he 'perceive a medical emergency or other exigency compelling [his] immediate action.'" To support its challenge, the State relies on Deputy Bestor's testimony that driving on a public roadway without a headlight creates a hazard. Based on this testimony, the State argues Deputy Bestor was concerned about an exigency compelling his immediate attention. Despite this

6

testimony, however, Deputy Bestor repeatedly testified he stopped the Subaru for a traffic violation and specifically denied invoking the community caretaking function for the stop. Accordingly, the evidence does not support the State's assertion that Deputy Bestor stopped the Subaru to perform a community caretaking function. *See State v. Fry*, 122 Idaho 100, 104, 831 P.2d 942, 946 (Ct. App. 1991) ("[A]n officer's community caretaking functions are totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.").

## IV.

## CONCLUSION

The State does not dispute that the Subaru's driver was on private property and, therefore, was not committing a traffic violation when Deputy Bestor stopped the Subaru. As a result, Deputy Bestor did not have reasonable suspicion to stop the Subaru, and the traffic stop violated Frandsen's Fourth Amendment rights. We reverse the district court's order denying Frandsen's motion to suppress, vacate the judgment of conviction, and remand.

Judge GRATTON and Judge LORELLO **CONCUR**.